# Appeal of James Rees et al.

The act of June 14, 1887, conferring upon companies organized thereunder for the encouragement of the arts and sciences, and of agriculture and horticulture, the right of eminent domain for the purpose of appropriating such public lands and other property as may be necessary for the purpose of their incorporation, by and with the consent of councils by ordinance duly approved, with the right to take any wharf or river landing not graded or paved by such municipality, notwithstanding any previous dedication of the same, is constitutional.

The fact that such act does not provide for compensation for such taking does not render the same unconstitutional, as any party injured thereby has his common-law remedy.

This act does not amount to a delegation of the right of eminent domain to municipalities; in this particular case it simply enlarges the right of the city of Pittsburgh to consent to the use of wharves for purposes not before allowed by the act of March 31, 1836.

An exposition society, not incorporated for profit but whose contributions constitute a fund "to establish polytechnic schools and maintain public exhibitions of artistic, mechanical, agricultural, and horticultural products," may take private property under the above act—such taking being for the public use.

(Argued November 8, 1887.  Decided January 3, 1888.)

October Term, 1887, No. 252, W. D., before Gordon, Ch. J., Paxson, Sterrett, and Williams, JJ.  Appeal from a decree of the Common Pleas No. 1 of Allegheny County dismissing a bill of complaint against the Western Pennsylvania Exposition Society, and the city of Pittsburgh.  Affirmed.

The facts of the case are given in the following report of the master, Jas. S. Young, Esq.:

The contention in this case, as appears from the bill and answer and other pleadings filed therein, is as to the right of the Western Pennsylvania Exposition Society to occupy (with permanent buildings and other improvements) a portion of the wharf of the city of Pittsburgh lying along the Allegheny river

between Duquesne way and the low-water line of said river, the Union Bridge, and Third street.

It is set forth in complainants' bill that they are lessees of certain lots of ground fronting on Duquesne way, upon which is erected a large building occupied by them in their business of boiler making and the construction of iron and steel vessels; that the proposed buildings of the defendant will shut out the light from their works, their business requiring plenty of sunlight; that also, by reason of said proposed buildings and improvements, they will be deprived of the facilities of shipping their manufactured products by the river, as they have heretofore and for a long time done, and will be prevented from using the wharf for other purposes in connection with their business of boat building; that the city of Pittsburgh is only entitled by virtue of the act of March 31, 1836, which grants to it the right to use said land for wharf purposes, and therefore cannot permit or grant to any person or corporation the right to use it for any other purpose. The complainants, therefore, pray for an injunction restraining said society from occupying said wharf with buildings and improvements.

The answer of said respondents denies all the principal allegations of the bill.

This case was carefully and fully heard by His Honor, Judge STOWE, upon a motion for a preliminary injunction, and an opinion filed therein by him sustaining the complainants' bill, and granting a preliminary injunction as prayed for; and as the whole case turned upon the right of the city of Pittsburgh to permit the wharf to be used for the purpose proposed by the society, or to grant to it the right to use it for any such purpose as proposed by it, and did not require an examination of the other facts stated in the bill, were it not for subsequent legislation (which, it is claimed, enlarges the power of the city of Pittsburgh so as to allow it to make the grant to the said society, and gives to the society and similar corporations the right to occupy the wharf for the purposes and in the manner proposed) the work of the master would be at an end, not only because the master is of the opinion that it is not within his province to attempt to reverse the court appointing him, but also because, in the opinion of the master, the opinion of the court filed in this case rests in the soundest law and most correct construction of the act of 1836, upon which the whole question turned.

But, in order that the whole matter may be understood by the court, and every advantage given to the parties upon final hearing, without further delay and a re-reference to the master, and because some of the facts are necessary in view of the subsequent legislation, the master finds the following facts:

First. The complainants are the lessees of certain lots of ground abutting on Duquesne way, opposite the proposed buildings and improvements of the Western Pennsylvania Exposition Society, upon the wharf, upon which lots are erected the buildings of complainants used by them in manufacturing boilers and constructing iron and steel boats and other work used in the building, fitting out, and repair of steamboats;

Second. That the said exposition society has prepared elaborate plans and proceeded to make excavations on the wharf, and to a large extent to build a retaining wall along the said wharf at or near the low-water line, and made other preparations looking to the erection of large buildings and other permanent improvements on said wharf; and that said buildings and permanent improvements will occupy the space almost from the line of Duquesne way to low-water mark, and from the Union bridge to Third street, and immediately in front of complainants' works;

Third. That said complainants, by reason of said buildings and improvements, will not enjoy the same facilities for shipping their manufactured products by river, nor for fitting out boats and constructing iron and steel boats, and of receiving heavy material used in their business by river, and generally in carrying on their business, which they now have; and said complainants will be put to greater expense in carrying on their business, and their profits consequently much reduced;

Fourth. The erection of the buildings and improvements proposed by said society will not interfere with the light to complainants' buildings;

Fifth. The city of Pittsburgh, by an ordinance approved the third day of March, 1886, granted to the Western Pennsylvania Exposition Society a lease, free of rent and taxes, for fifty years, of all that portion of the Allegheny wharf lying between Duquesne way low-water lines, the Union bridge, and Third street, with the right to erect buildings and make permanent improvements thereon, said buildings and improvements to be forfeited to the city, with the lease, upon certain defaults being made by

said society, and to revert to the city at the termination of the lease;

Sixth. That said society was incorporated under the laws of the state of Pennsylvania upon the 31st day of October, 1885;

Seventh. That said society duly surrendered its charter in pursuance to the act of June 14, 1887, upon the 17th day of June, 1887, having upon that day duly accepted the provisions of said act;

Eighth. That new letters patents were duly granted to said society under the provisions of the act of June 14, 1887;

Ninth. That said society by resolution duly passed upon the 24th day of June, 1887, appropriated the premises of said city between Duquesne way, the Allegheny river, the Union bridge, and Third street, for the purposes set forth in its charter, which resolution is as follows: Meeting of the board of directors of the Western Pennsylvania Exposition Society. Resolved, That this society by virtue of the powers conferred by the act of assembly of Pennsylvania, approved June 14, 1887, and in accordance with the consent of the city of Pittsburgh, granted by ordinance duly passed March 3, 1886, does hereby appropriate for its use the premises belonging to the city of Pittsburgh, lying east of the Union bridge, and extending eastwardly along Duquesne way to Third street, and from the line of Duquesne way to low-water mark on the Allegheny river; such premises being necessary for the purpose and use of this society;

Tenth. That said wharf has never been graded and paved by the city of Pittsburgh.

From the above findings of fact it will be observed that since the reference of this case to the master, the legislature has passed the act of June 14, 1887, and that it is, by virtue of this legislation, that the said society now claims the right to occupy the wharf.

The pleadings in the case have been amended so as to bring the whole matter properly before the court.

It is claimed by counsel for complainants that this act is unconstitutional:

1. Because it takes away private property without providing for compensation therefor, or without designating any manner of assessing damages for such taking;

2. Because it delegates to municipal corporations the right

to confer upon certain corporations the right of eminent domain;

3. Because the purposes of such corporations do not warrant the conclusion that the taking of private property by them is a taking for public use.

As to the first reason, it is urged that the title to the fee in the land occupied as a wharf is in the heirs of the proprietors of Pennsylvania, the title to said land not having been devested by the act of November 27, 1779; that the city of Pittsburgh, by virtue of the act of March 31, 1836, has only an easement on said land, and that the granting to the said society of said land by the act of June 14, 1887, for a different purpose, is a new taking, and therefore a taking of private property; and that the act of June 14, 1887, does not provide compensation for such taking, and is not therefore constitutional.

It is impossible to determine whether or not the land in question was not included in the devesting act of 1779, with the information accessible. It might be determined by an examination of the plots laid out by the proprietors, and the returns to the land office prior to July 4, 1776, as on file at Harrisburg.

It is impossible also to determine in whom the title is. It is certain that it is not in the abutting lot holders, as that question has been decided in numerous cases, commencing probably with Com. v. M'Donald, 16 Serg. & R. 397, and ending with Schenley v. Pittsburgh, 104 Pa. 472.

But, in the view the master takes of this case, it is not necessary to determine these facts. Although the act of June 14, 1887, does not provide compensation, and although the title in fee for said land were in certain persons definitely determined, the act is not unconstitutional, for the reason first laid down, because the Constitution of 1874 provides for just compensation being made for property taken, injured, or destroyed; and although the act granting the right to take does not provide compensation, or designate a method of determining the damages suffered, the party has still his common-law remedy. Pennsylvania R. Co. v. Duncan, 111 Pa. 352, 5 Atl. 742, is authority upon this question.

The first reason must, therefore, fall.

As to the second reason, it is urged that the power to grant the right of eminent domain pertains to the commonwealth only in right of its sovereignty, and this power cannot be delegated

to another; and that the act of June 14, 1887, pretends, in this and similar cases, to delegate to the city of Pittsburgh the power to grant the right of eminent domain to the society.

This proposition is not sound. It appears to the master that the act of June 14, 1887, simply enlarges the right of the city to consent to the use of the wharf for purposes not before allowed by the act of 1836; and that the act grants to the society and similar corporations the right of eminent domain as to certain lands, and in the case of wharves, only with the consent of the city—and this in order to prevent the city from being despoiled of its necessary landing places, and must be considered just such a limitation on its right to occupy all property as we find in the case of other corporations, which are prevented from taking burying grounds and other specified property. If the reason urged were sound, every act which provides for the taking of property for public use would fail, because it did not confer on the person or corporation invested with the right the power to take any and all land in the commonwealth, which would be manifestly absurd.

The second reason must, therefore, fall.

The third reason suggested is that the purposes of such corporations as are provided for in the act of June 14, 1887, do not warrant the conclusion that the taking is for public use. The question of public use is one difficult to determine. But it may be assumed as sound that wherever the taking is a public necessity, as in the case of highways, or is for the welfare of the people, it is taking for public use, or, as is said in the case of Edgewood R. Co.'s Appeal, 79 Pa. 269: "The commonwealth transfers to her citizens her power of eminent domain, only when some existing public need is to be supplied, or some present public advantage is to be gained."

And Judge COOLEY in his valuable work, Const. Lim. 533, says: "A public use is where government is supplying its own need or furnishing facilities for its citizens, as to matters of public necessity, convenience, or welfare, which from their peculiar character, or the difficulty of providing for them otherwise, it is useful for the government to provide."

The purpose for which such corporations can be created, as provided by the act of June 14, 1887, is for "the educating of the public by exhibiting artistic, mechanical, agricultural, and horticultural products, and providing public instruction in the

arts and sciences." The preamble of the act sets forth the necessity of such societies or expositions. It need not now in this day be argued that the education of the citizens of the commonwealth is a necessity, or that education conduces to the welfare of the public. And in view of the above authorities, and of the fact that the purpose of such corporations is the education of the public, and that education is both necessary and the public welfare demands it, the conclusion irresistibly follows that the taking of private or other property by such corporations, for the purposes set forth in the act creating such corporations, is a taking for public use. And while the question of what is a public use is finally a judicial question, yet, it has been aptly said in the case of Edgewood R. Co.'s Appeal, 79 Pa. 257: "That the control of the right of eminent domain rests with the legislature (Cooley, Const. Lim. 538); and that the degree of the public necessity for the exercise of that right is exclusively for their ascertainment (Smedley v. Erwin, 51 Pa. 445), is undoubted."

The legislature, by the act of June 14, 1887, not only has ascertained that necessity and granted the right of eminent domain in set terms, but it has declared the taking of such public lands for the purposes named in the act to be a taking of said land for public use. Act of June 14, 1887, § 4 (P. L. 385).

The master, therefore, concludes that none of said reasons are well founded, and that the said act of June 14, 1887, is constitutional and empowers the Western Pennsylvania Exposition Society to occupy the land described in the ordinance of the city of Pittsburgh of March 3, 1886, with its buildings and improvements.

The master, therefore, recommends that the bill in this case be dismissed, and the injunction dissolved.

In view of the fact that this bill is dismissed, solely by reason of the legislation obtained after the cause had been so proceeded in that all the testimony had been taken, and that nothing practically remained to be done, except to prepare the report of the master, the master is of the opinion that the costs of this proceeding to the present time, including the master's fee, should be borne by the Western Pennsylvania Exposition Society.

The court entered a decree in accordance with this opinion; whereupon, complainants took this appeal, assigning for error this action of the court.

*John S. Ferguson,* for appellants.—The title to the act is in these words: "An Act to Provide for the Incorporation and Regulation of Companies, Not for Profit, Organized for the Encouragement of the Arts and Sciences, and of Agriculture and Horticulture, and to Confer Upon Such Companies the Right of Eminent Domain."

Eminent domain is the right remaining in the state to take private property for public use. Mills, Em. Dom. § 1.

"There exists in every sovereignty the rightful authority to appropriate and control individual property for the public benefit"—and that rightful authority is eminent domain. Cooley, Const. Lim. p. 524.

An analysis of the act seems to us to amount to a demonstration that it is unconstitutional by reason of the provisions of article 3, § 3, of the Constitution. The title does not clearly indicate its subject-matter, and it is therefore unconstitutional. Ruth's Appeal, 10 W. N. C. 498.

The title tends to mislead as to the power granted. It conveys, for instance, the belief that eminent domain as ordinarily understood is intended to be granted; and no one would infer that streets, highways, and wharves were to be given up, and past ordinances, giving them up, ratified, and solemn acts of assembly, preventing such ordinances, repealed. It is therefore unconstitutional. Union Pass. R. Co.'s Appeal, 81 *Pa. 91.

But even if we did not question the constitutionality of the act, we might fairly contend that the society, under its provisions, takes no right to the wharf in question. It claims by virtue of nothing done by it or by the councils of the city since the passage of the act, except the surrender of its former charter, and the acceptance of the provisions of the act of 1887. It stands upon the ordinance of councils passed in 1886. That ordinance was an illegal attempt to nullify the acts of 1836 and 1867.

To operate as claimed by appellees the acts of 1836 and 1867 must be taken as repealed under the general repealing clause. But there is no such repugnancy as to demand the implication of such repeal. If the two acts can stand together, there is no repeal by implication. Williamsport v. Brown, 84 Pa. 438; *Re* Barber, 86 Pa. 392.

It may fairly be doubted whether the legislature by direct enactment could give away public property. No doubt it pos-

sesses all legislative power, except such as is prohibited by express words or necessary implication. Lewis's Appeal, 67 Pa. 153.

In many states it has been held that land belonging to the state and devoted to public use may be taken for another public use under authority, without compensation. But the general tenor of the Constitution of 1874, and particularly the provisions of article 3, §§ 17, 18, and article 9, §§ 3, 6, 7, seems to raise a strong implication that no such power resides in our legislature. At all events "an intent to alienate . . . [public] lands without any consideration will not, in the absence of a formal grant in express words, be implied except upon the clearest necessity to effectuate the purpose of the legislature in investing the grantee with public franchises." Stevens v. Paterson & N. R. Co. 34 N. J. L. 532, 3 Am. Rep. 269.

The legislature cannot delegate the power of passing laws relating to these subjects, any more than they can delegate the power to legislate on other subjects. Locke's Appeal, 72 Pa. 491, 13 Am. Rep. 716. See also Taxpayer's Petition, 25 Pittsb. L. J. 146; Parker v. Com. 6 Pa. 507, 47 Am. Dec. 480.

So here; whether the act should operate as to the particular kind of property in question, in any place, depended not on the will of the legislature, but on the will of councils.

A statute cannot authorize the exercise of eminent domain, unless it provides in express terms for the certain payment of compensation. Thacher v. Dartmouth Bridge Co. 18 Pick. 501; Eastman v. Amoskeag Mfg. Co. 44 N. H. 143, 82 Am. Dec. 201; *Re* Mount Washington Road Co. 35 N. H. 134; Boston & L. R. Corp. v. Salem & L. R. Co. 2 Gray, 1; Gray v. First Division of St. Paul & P. R. Co. 13 Minn. 315, Gil. 289; Hooker v. New Haven & N. Co. 14 Conn. 160, 36 Am. Dec. 477; Denslow v. New Haven & N. Co. 16 Conn. 98; Clark v. Saybrook, 21 Conn. 324; Pittsburgh v. Scott, 1 Pa. St. 309.

The constitutional provision requiring compensation does not execute itself. Watson v. Pleasant Twp. 21 Ohio St. 667.

It is not enough that the owner may have his action to recover damages against the individual or corporation that enters on his land. Piscataqua Bridge v. New Hampshire Bridge, 7 N. H. 66.

A mere judgment is not held to be compensation. Powers v.

Armstrong, 19 Ga. 427; Avery v. Fox, 1 Abb. (U. S.) 254, Fed. Cas. No. 674.

The purposes described in the act are not public purposes or uses.

Article 10, Const., defines the limit of legislative power, with reference to the education of the people.

There is no doubt that in May, 1784, when Wood's plan of Pittsburgh was laid out, John Penn and John Penn, Jr., under the provisions of the act of November 27, 1779 (P. L. 479), held an absolute title in fee to the ground in question. By Wood's plan, a copy of which covering the ground now in controversy will be found in Schenley v. Pittsburgh, 104 Pa. 472, the Penns dedicated the strips of ground along the Monongahela and Allegheny rivers for public use. That dedication only gave to the public the use—not the fee. Com. v. M'Donald, 16 Serg. & R. 390; Barclay v. Howell, 6 Pet. 498, 8 L. ed. 477; Spring Garden v. Northern Liberties, 1 Whart. 25; Com. v. Alburger, 1 Whart. 469; Bailey v. Miltenberger, 31 Pa. 39; Pittsburgh v. Scott, 1 Pa. St. 309.

The adjoining owner has a property in a street which is as much property as the land itself. Elizabethtown, L. & B. S. R. Co. v. Coombs, 10 Bush, 382, 19 Am. Rep. 67.

It is certain that where a party sells property in a city bounding it by streets, such a sale implies, necessarily, a covenant that the purchaser shall have the use of such treets. Moale v. Baltimore, 5 Md. 321, 61 Am. Dec. 276; Union Burial Ground Soc. v. Robinson, 5 Whart. 18; Harris v. Elliott, 10 Pet. 25, 9 L. ed. 333; Tyler v. Hammond, 11 Pick. 194.

In a case where the owner of land in a city lays out a street through it and sells lots, the rights of the different parties concerned appear to be as follows: The public has an easement of way or right of passage, and the corporation has a right to make ordinances, and the state to make laws, as to the manner in which this right of way or public street shall be used; but besides this public privilege the grantees of the lots are purchasers by implied covenant from the grantor of the right to have that interval of ground left open forever. Livingston v. New York, 8 Wend. 85, 22 Am. Dec. 622; Alden v. Murdock, 13 Mass. 256; New Orleans v. United States, 10 Pet. 663, 9 L. ed. 573; Parker v. Framingham, 8 Met. 260; Kirkham v. Sharp, 1 Whart. 323, 29 Am. Dec. 57; Cope v. Grant, 7 P.

488; note to Dovaston v. Payne, 2 Smith, Lead. Cas. *pp. 218, 219.

It would seem to follow, therefore, that the owners of the fee of the lots occupied by the appellants have a property in this wharf, to wit, the right at least of having it kept open, and that the appellants during the term of their lease have the same right.

These suggestions are in no way weakened by the act of 1836. That act operated only in so much of the private right as was inconsistent with the public use of the property for a street and wharf, and only to that extent provided for compensation. Pittsburgh v. Scott, 1 Pa. St. 309; Bailey v. Miltenberger, 31 Pa. 39.

*W. F. McCook,* for appellee, Western Pennsylvania Exposition Society.—Schenley v. Pittsburgh, 104 Pa. 472, sets at rest any claim of the plaintiffs to having any private property or right to the wharf. They never owned either the freehold or riparian rights to it. The title of the state, or of the city, its local agent, is absolute.

As bearing upon cases cited by appellants, it will be necessary to notice that the act of 1836 also authorized the city to appropriate land not owned by the city, lying up the river and above the Schenley property, so as to extend Duquesne way to the eastern city line. To this latter part of the wharf she has but an easement; hence Bailey v. Miltenberger, 31 Pa. 39, and Pittsburgh v. Scott, 1 Pa. St. 309, do not apply to the part in controversy.

The appellants' argument is entirely founded on the proposition that the exposition society is exercising the right of eminent domain as to their private property, otherwise their case falls. Our answer to this proposition is twofold:

First. They have no title to, or property in, or easement on, the wharf opposite their premises, to be appropriated. Schenley v. Pittsburgh, 104 Pa. 472.

Second. The society is not in possession of the wharf under any exercise of eminent domain, nor can it be; hence appellants' property is not "injured or destroyed" by the exercise of eminent domain.

Here the property occupied is public in its use and ownership; and the taking is by the consent of the legislature of the state,

and the councils of the city. Without that consent, it could not have been taken.

Therefore, the private property of appellants is not "taken, injured, or destroyed" by a corporation "vested with the power of eminent domain," and article XVI., § 8, of the Constitution has no application to this case. See Pennsylvania R. Co. v. Lippincott, 116 Pa. 472, 2 Am. St. Rep. 618, 9 Atl. 871.

See also Edmundson v. Pittsburgh, M. & Y. R. Co. 111 Pa. 316, 2 Atl. 404; Pennsylvania R. Co. v. Duncan, 111 Pa. 352, 5 Atl. 742.

The purposes of this charter are almost identical with those to which the central board of education in cities of the second class is authorized to apply public school funds by act of June 25, 1885 (P. L. 176).

PER CURIAM:

We have carefully examined the master's report in this case, and regard it as a sound exposition of the law governing the controversy in hand; it fully warranted the court below in entering the decree we have before us, and in this action we concur.

The appeal is dismissed and the decree affirmed, at the costs of the appellants.